```
                  IN THE UNITED STATES DISTRICT COURT
                  FOR THE MIDDLE DISTRICT OF GEORGIA
                           COLUMBUS DIVISION

JOHN REDMAN, et al.,                *

        Plaintiffs,                 *

vs.                                 *
                                              CASE NO. 4:07-CV-181 (CDL)
THE CITY OF COLUMBUS, GEORGIA,      *
et al.,
                                    *
        Defendants.
                                    *
```

O R D E R

This action arises from Plaintiff's arrest by Columbus police officers on November 18, 2006.  Presently pending before the Court is Defendants' Motion for Summary Judgment (Doc. 14).  For the reasons set forth below, Defendants' motion is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment has the burden to show that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the summary judgment movant meets its burden, the burden shifts and the nonmoving party must produce evidence to show that there *is* a genuine issue of material fact.  *Id.* at 324.  The nonmoving party must "go beyond the pleadings," *id.,* and point the Court to "specific facts showing a

genuine issue for trial," Fed. R. Civ. P. 56(e)(2); *accord Celotex Corp.*, 477 U.S. at 324.

The movant is entitled to summary judgment if, after construing the evidence in the light most favorable to the nonmoving party and drawing all justifiable inferences in favor of the nonmoving party, no genuine issues of material fact remain to be tried.[1] Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It is not enough to have *some* alleged factual dispute; there must be a genuine issue of material fact to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for Plaintiff—there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Anderson*, 477 U.S. at 248.

---

[1] Plaintiff appears to confuse the summary judgment standard. For example, Plaintiff asserts that his definition of abuse "controls the outcome" of the present motion. (Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. 4 ¶ 5 [hereinafter Pl.'s Opp'n].) Though the Court must view the facts in the light most favorable to Plaintiff, the Court must decide conclusions of law, and the Court is not required to accept Plaintiff's conclusions of law as true.

FACTUAL BACKGROUND

Viewing the evidence in the light most favorable to Plaintiff[2] reveals the following.[3]

Defendant Consolidated Government of Columbus, Georgia ("Columbus" or "the City") is a consolidated city and county government. Defendant Richard Boren is, and was at all times relevant to this action, Chief of Police of the Columbus Police Department. Boren was not present for Plaintiff's arrest. Defendant Jim Wetherington is the current mayor of Columbus, Georgia. Wetherington was not yet mayor of Columbus at the time of Plaintiff's arrest, nor was he present for Plaintiff's arrest. Defendant Ralph Johnson was sheriff of Muscogee County during the relevant timeframe. Johnson was not present for Plaintiff's arrest. Defendant Joiner is a lieutenant for the Columbus Police Department. Joiner is the officer who arrested Plaintiff; at the time of the arrest, Joiner was a sergeant. Plaintiff also attempts to sue "Unknown Supervisor of Sgt. Joiner." According to Plaintiff, a "short, black-skinned major" was present during Plaintiff's arrest. (Pl.'s Opp'n at 4 ¶ 5.) However, Plaintiff has not provided the Court with the major's name.

---

[2]The Complaint lists John Redman as the Plaintiff, along with "John and Jane Does." Plaintiff never amended his Complaint to name other plaintiffs, and the Court thus dismisses the John and Jane Doe plaintiffs.

[3]The bulk of these factual findings are based upon Plaintiff's deposition testimony, and Plaintiff has not pointed the Court to specific evidence in the record to rebut his testimony. Defendants' Statement of Material Facts (Doc. 15) is, unless otherwise noted, supported by accurate pinpoint citations to Plaintiff's deposition testimony, so the Court finds it unnecessary to repeat those citations in this Order.

3

Moreover, Plaintiff has neither amended his Complaint to add the major's name nor served the major with the Complaint. Therefore, the Court dismisses Plaintiff's Complaint as to "Unknown Supervisor of Sgt. Joiner."

It is not clear whether Plaintiff is suing the individual Defendants—Boren, Wetherington, Johnson, and Joiner—in their official or individual capacities. The Court will treat Plaintiff's *pro se* Complaint as making both types of claims. To the extent that Plaintiff is making official capacity claims against these Defendants, those claims are considered claims against Columbus and the Muscogee County Sheriff because an official capacity suit is another way of pleading an action against the entity of which an officer is an agent. *Smith v. Allen*, 502 F.3d 1255, 1275 (11th Cir. 2007). Individual capacity claims, on the other hand, are against each officer personally.

On November 18, 2006, Plaintiff drove by himself from Hapeville, Georgia to Columbus, Georgia to attend the SOA Watch demonstration near Fort Benning. Plaintiff arrived in Columbus early in the morning and went to the demonstration area. The area for the SOA Watch demonstration was fenced on all sides, one of which abuts Fort Benning, and it had a wide entrance. Plaintiff entered the fenced area through the entrance between 8:00 and 9:00. Around 11:00, Plaintiff approached Joiner, who was on duty at the time, to discuss

where and when Plaintiff would be arrested.[4]  Plaintiff "certainly wanted to be arrested," and he told Joiner that he would like to be arrested around 1:00 or 2:00, after he had spent some more time at the demonstration.

Around 1:45 p.m., Plaintiff went to a restricted gate off the SOA Watch demonstration area and spoke with Joiner.  Plaintiff told Joiner that he would like to walk through the gate, but Joiner told Plaintiff that he could not.[5]  Plaintiff did not want to walk through the gate to access any event; according to Plaintiff, there was nothing on the other side of the gate except a public sidewalk that ended "in a gated community with the fences locked." (Pl.'s Dep. 88:3-7, Mar. 10, 2009.)  Plaintiff claims that there was a short distance of public sidewalk between the access point and the end of the sidewalk.  Joiner told Plaintiff that he could not walk through the access point, that the access point was for law enforcement personnel only, and that if Plaintiff did not go away he would be arrested.  According to Plaintiff, only City officials, law enforcement, and residents of the gated community at the end of the sidewalk were permitted to go through the access point.  Plaintiff

---

[4]Plaintiff and Joiner were acquainted because Joiner arrested Plaintiff during a previous SOA Watch demonstration.

[5]There were two public gates where Plaintiff could have exited the SOA Watch demonstration area.

5

presented no evidence that any individuals who were against SOA Watch were allowed through the access point.[6]

Plaintiff refused to leave the gate area because he "refused to give up [his] right to attempt to access [his] public sidewalk." (Pl.'s Dep. 161:22-23.)  Joiner warned Plaintiff three times that he would be arrested if he did not go away.  Plaintiff gave Joiner a letter explaining that Plaintiff would sue Joiner and others if Joiner arrested him.  When Plaintiff refused to move in response to the warnings, Joiner arrested him.  When he was arrested, Plaintiff's arms were forced behind his back, and Plaintiff was handcuffed. After that, two officers other than Joiner put Plaintiff in a police car and drove him to the jail.  During the twenty-minute ride to the jail, Plaintiff had to sit on his hands and was uncomfortable.  While he was under arrest, Plaintiff was not free to leave or to associate with other SOA Watch demonstrators, and police officers asked Plaintiff questions which Plaintiff contends were designed to elicit positive responses about the officers' treatment of Plaintiff.

When Plaintiff arrived at the Muscogee County jail for booking, he was wearing approximately seventeen paper wristbands from various festivals.  The jail intake staff–not any Defendant named in this action–cut off the wristbands that Plaintiff was not able to slip

---

[6]Plaintiff asks the Court to assume that anyone who was allowed to use the gate, including residents of the gated community near the access point, is against SOA Watch. (Pl.'s Opp'n at 4 ¶ 5.)  The Court cannot engage in such speculation in determining whether a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 586.

over his hand.[7]  While in jail, Plaintiff had to wear jail clothes. After a few hours, Plaintiff was bailed out of jail and went home.

Plaintiff was charged with obstruction of an officer under O.C.G.A. § 16-10-24, and he was found guilty of that offense in Recorder's Court.  Plaintiff contends that he appealed his conviction to the State Court of Muscogee County but claims that although the state court judge held a hearing and received Plaintiff's various motions regarding the case, nothing ever happened with the appeal. Plaintiff admits that he has not contacted the court or the clerk of court to inquire about the status of his appeal.  Plaintiff assumes that the state court has abandoned his appeal but points to no documentary evidence, such as a docket sheet or an order, regarding the disposition of his appeal.  Plaintiff has not sought review of his conviction by any other state court.

## DISCUSSION

### I.   Federal Law Claims

Based on its review of the Complaint[8] and Plaintiff's opposition to Defendants' Motion for Summary Judgment, the Court concludes that Plaintiff is attempting to assert claims under 42 U.S.C. § 1983 ("§ 1983") for false arrest (Compl. ¶ 1), denial of a speedy trial

---

[7]Jail personnel returned all of the wristbands to Plaintiff when he was released.

[8]Plaintiff titled his claims as follows: (1) False Arrest, (2) Abuse of Process, (3) Battery, (4) Breach of Fiduciary Duty, (5) Denial of Speedy Trial, (6) Conspiracy, (7) Malicious Prosecution, (8) Intentional Infliction of Emotional Distress, (9) Assault, (10) Negligence, (11) Theft, (12) Destruction of Property, and (13) Denial of Due Process.

7

(*id.* ¶ 5), malicious prosecution (*id.* ¶ 7), theft (*id.* ¶ 11), destruction of property (*id.* ¶ 12), and denial of due process (*id.* ¶ 13). Plaintiff also appears to assert a First Amendment claim under § 1983 challenging the use of barriers and presence of "high numbers" of law enforcement officers at the SOA Watch demonstration. (*Id.* ¶¶ 2, 4, 6.) Plaintiff also claims that "[a]ll persons having supervisory capacity in governmental functions such as law enforcement" negligently supervised their subordinates, resulting in Plaintiff's alleged injuries. (*Id.* ¶ 10.) In addition, Plaintiff contends that "the police and sheriff department personnel as constituted and used at the time of [P]laintiff's injuries occupied an unconstitutional position in the government of the State of Georgia."[9] (Pl.'s Aff. ¶ 2, June 4, 2009.) Finally, Plaintiff appears to contend that this Court should consider his claims regarding his Recorder's Court conviction as a petition for habeas corpus.[10] (*Id.* ¶ 3.)

### A. False Arrest and First Amendment Claims

Under the Fourth Amendment, an individual has a right to be free from "unreasonable searches and seizures." An arrest is a seizure,

---

[9] In support of this contention, Plaintiff cites a law review article: Roger Roots, *Are Cops Constitutional?*, 11 Seton Hall Const. L.J. 685 (2001). Plaintiff points to no evidence or law to support his position that the Columbus police department is unconstitutional, and the Court thus rejects this claim.

[10] To the extent Plaintiff attempts to make a petition for habeas corpus, the Court rejects it. Plaintiff has pointed to no evidence that he is "in custody" as required by 28 U.S.C. § 2241(c)(3) or that he has exhausted his state court remedies as required by 28 U.S.C. § 2254(b)(1).

8

and the "reasonableness" of an arrest is "determined by the presence or absence of probable cause for the arrest." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Id.* (internal quotation marks omitted). Whether an officer has probable cause to arrest "depends on the elements of the alleged crime and the operative fact pattern." *Id.* at 1137-38 (citation omitted). The existence of probable cause at the time of the arrest "constitutes an absolute bar to a section 1983 action for false arrest." *Case v. Eslinger*, 555 F.3d 1317, 1326-27 (11th Cir. 2009) (internal quotation marks omitted).

Here, Defendants contend that Joiner had probable cause to arrest Plaintiff for obstructing a police officer under O.C.G.A. § 16-10-24(a), which provides, "a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor." The undisputed facts show that Plaintiff approached Joiner and sought access to the restricted gate. Joiner told Plaintiff three times that he could not go through the restricted gate and instructed Plaintiff to leave the area, but Plaintiff refused to follow Joiner's instructions.

9

Plaintiff's key contention with regard to this claim is that Joiner could not, under the First Amendment, lawfully restrict Plaintiff from the sidewalk he sought to access, so Plaintiff did not commit obstruction when he refused to follow Joiner's instructions to leave the restricted gate area. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech . . . ." Defendants do not dispute that as a general matter peaceful participation in a demonstration such as SOA Watch is an expressive activity involving "speech" protected by the First Amendment. Defendants also do not dispute that public places historically associated with the free exercise of expressive activities, such as public sidewalks, are generally considered to be "public forums." In a public forum, the government "may enforce reasonable time, place, and manner regulations as long as the restrictions are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *United States v. Grace*, 461 U.S. 171, 177 (1983) (internal quotation marks omitted). Here, Plaintiff has pointed to no evidence that the government's creation of a fenced-off area for the SOA Watch demonstration—including a gate to be used only by law enforcement personnel and residents of a gated community near the gate—is not a valid time, place and manner regulation.[11] Furthermore,

---

[11] The undisputed evidence shows that there were two public gates for entering and exiting the SOA Watch demonstration area; the restricted gate was not the only access point for participating in the demonstration.

Plaintiff proffered no evidence that Defendants engaged in viewpoint discrimination with regard to the restricted gate—Plaintiff submitted no evidence showing that Defendants allowed individuals opposed to SOA Watch through the gate while excluding SOA Watch participants.

For these reasons, the Court concludes that Defendants could lawfully keep Plaintiff from using the restricted gate. Therefore, when Plaintiff three times ignored Joiner's instructions for Plaintiff to leave the restricted area, Joiner had probable cause to believe that Plaintiff was knowingly and willfully obstructing or hindering Joiner in the lawful discharge of his official duties. Thus, Plaintiff has failed to show a constitutional violation with regard to his arrest. Accordingly, all Defendants are entitled to summary judgment on Plaintiff's § 1983 false arrest claim and any supervisory liability claims related to the arrest.[12] In addition, because Plaintiff has pointed to no evidence that the government's creation of a fenced-off area for the SOA Watch demonstration is not a valid time, place, and manner regulation, the Court concludes that Plaintiff has not established a First Amendment violation. Thus,

---

[12]To be precise, since the Court finds that no constitutional violation occurred, Columbus and the Muscogee County Sheriff–to the extent that the Sheriff is not shielded by sovereign immunity—are entitled to summary judgment because without a constitutional violation Plaintiff cannot establish that Columbus or the Sheriff had a policy or custom that resulted in any deprivation of Plaintiff's constitutional rights. *See Case,* 555 F.3d at 1328. The individual Defendants are entitled to summary judgment based on qualified immunity because without a constitutional violation Plaintiff cannot show that the individual Defendants violated clearly established law. *See McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009).

11

Defendants are entitled to summary judgment on Plaintiff's First Amendment claims, including his claims for "Abuse of Process" (Compl. ¶ 2), "Breach of Fiduciary Duty" (*id.* ¶ 4), and "Conspiracy" (*id.* ¶ 6), and any supervisory liability claims related to the First Amendment claims.[13]

### B.  Destruction of Property Claim

Plaintiff's destruction of property claim arises from the Muscogee County jail booking process, during which the jail intake staff cut seventeen paper wristbands off Plaintiff's wrist. (Compl. ¶ 12.)  The wristbands were returned to Plaintiff when he was released, but Plaintiff contends that the wristbands were destroyed when they were cut because Plaintiff could no longer wear them.  One of Plaintiff's key contentions regarding this claim appears to be that Defendants had no authority to arrest him and thus no authority to subject Plaintiff to the jail's booking policies, including the jail's policy regarding what property an inmate can and cannot have in jail. As discussed above, Defendants did have authority to arrest Plaintiff.  Plaintiff also argues that the jail's booking intake policies were unreasonable as applied to him but points the Court to no evidence on this point.  Plaintiff also does not point to evidence that any Defendant to this action was personally involved in cutting off his wristbands.  For all of these reasons, Defendants are

---

[13]*See supra* note 12.

entitled to summary judgment on Plaintiff's destruction of property claim.[14]

> C. Malicious Prosecution, Denial of Due Process, Denial of a Speedy Trial, and Theft

To prove a § 1983 malicious prosecution claim, Plaintiff must show "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008) (internal quotation marks omitted). The existence of probable cause defeats a § 1983 malicious prosecution claim. *Id.* As discussed above, Joiner had probable cause to arrest Plaintiff. Plaintiff points to no evidence that negates probable cause, and he also points to no evidence that the criminal prosecution terminated in his favor. Accordingly, Defendants are entitled to summary judgment on Plaintiff's malicious prosecution claim and any supervisory liability claims related to Plaintiff's prosecution for obstruction.[15]

---

[14] The Court notes that the only conceivable named Defendant on the destruction of property claim is the Muscogee County Sheriff in his official capacity because the Sheriff oversees the jail. In general, a Georgia county sheriff is entitled to sovereign immunity on claims arising out of his law enforcement and jail administration decisions, *see, e.g., Manders v. Lee*, 338 F.3d 1304, 1328 (11th Cir. 2003) (en banc), so even if Plaintiff had pointed to some evidence that might support his destruction of property claim, the claim would be barred.

[15] *See supra* note 12.

Plaintiff's due process, theft, and speedy trial claims arise from alleged failures of the state court system. First, Plaintiff's due process claim arises from Plaintiff's allegation that he never received "an enumerated charge of offense" prior to—or since—the Recorder's Court proceeding.[16] (Compl. ¶ 13.) Second, Plaintiff's theft claim appears to be based on fines and fees related to Plaintiff's Recorder's Court conviction and subsequent appeal. (*Id.* ¶¶ 5 & 11.) Finally, Plaintiff's speedy trial claim is based upon the alleged failure of the State Court of Muscogee County to hear Plaintiff's appeal from his Recorder's Court conviction. It is undisputed that no Defendant in this action is employed by either the Recorder's Court or the State Court of Muscogee County. Plaintiff has pointed to no evidence to show a basis for holding Defendants in this action liable for the acts and omissions of the Recorder's Court or the State Court of Muscogee County. Thus, even if Plaintiff had sufficient evidence to proceed against those individuals and entities responsible for the acts and omissions resulting in Plaintiff's due process, theft, and speedy trial claims, Defendants are not the entities or individuals responsible. Defendants are therefore entitled to summary judgment on Plaintiff's due process, theft, and speedy trial claims.

---

[16] It is undisputed that Plaintiff knew he was charged with obstruction prior to the Recorder's Court proceeding. Plaintiff does not recall if he was provided with the code section.

14

**II.  State Law Claims**

Plaintiff's state law claims appear to be for battery (Compl. ¶ 3), intentional infliction of emotional distress (*id.* ¶ 8), and assault (*id.* ¶ 9).  Plaintiff may also be attempting to make state law claims for false arrest, malicious prosecution, and theft.  Defendants contend that they are entitled to immunity on all of Plaintiff's state law claims.  The Court agrees.

Columbus and the Muscogee County Sheriff are entitled to summary judgment as to all of Plaintiff's state law claims because they are entitled to sovereign immunity.  The doctrine of sovereign immunity protects governments, including counties[17] and county sheriffs, from suit unless they have waived their immunity.  *Gilbert v. Richardson*, 264 Ga. 744, 754, 452 S.E.2d 476, 484 (1994); *Williams v. Whitfield County*, 289 Ga. App. 301, 302-03, 656 S.E.2d 584, 586 (2008).  Sovereign immunity "may only be waived by a legislative act which specifically provides that sovereign immunity is waived and the extent of such waiver."  *Williams*, 289 Ga. App. at 302, 656 S.E.2d at 586.  Here, Plaintiff has not established any waiver of immunity by Columbus or the Muscogee County Sheriff, so Columbus and the Muscogee County Sheriff are entitled to summary judgment on Plaintiff's state law claims.  *See Tittle v. Corso*, 256 Ga. App. 859, 863-64, 569 S.E.2d 873, 878 (2002) (finding that sheriff was entitled to

---

[17]Columbus is a consolidated city-county government, and the Court views Columbus as a county for purposes of the sovereign immunity inquiry. *See Bowen v. Columbus*, 256 Ga. 462, 462-63, 349 S.E.2d 740, 741-42 (1986).

sovereign immunity on plaintiff's assault, battery, and intentional infliction of emotional distress claims because plaintiff had not established any waiver of immunity).

Turning to Plaintiff's state law claims against the individual Defendants, a suit against a governmental employee sued in his individual capacity "is barred by official immunity where the public official has engaged in discretionary acts that are within the scope of his or her authority, and the official has not acted in a wilful or wanton manner; with actual malice; or with the actual intent to cause injury." *Brown v. Penland Constr. Co.*, 281 Ga. 625, 625-26, 641 S.E.2d 522, 523 (2007). Joiner was engaging in a discretionary act when he arrested Plaintiff, and the other individual Defendants were engaging in discretionary acts when they made the policies and supervisory decisions which Plaintiff challenges.

The next question is whether any Defendant acted in a wilful or wanton manner, with actual malice, or with actual intent to cause injury. "Actual malice" means "a deliberate intention to do wrong, and does not include 'implied malice,' i.e., the reckless disregard for the rights or safety of others." *Murphy v. Bajjani*, 282 Ga. 197, 203, 647 S.E.2d 54, 60 (2007). A "deliberate intention to do wrong" is "the intent to cause the harm suffered by the plaintiffs." *Id.* Similarly, "actual intent to cause injury" means "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." *Kidd v. Coates*, 271

16

Ga. 33, 33, 518 S.E.2d 124, 125 (1999) (internal quotation marks omitted). Plaintiff has pointed to no evidence that Defendants acted with actual intent to cause him harm. Plaintiff's key argument appears to be that Joiner acted with malice because he arrested Plaintiff. Thus, Plaintiff's allegations of malice are nothing more than acts of alleged wrongdoing done "with reckless disregard for the [rights] of others." *Murphy*, 282 Ga. at 203-04 & n.6, 647 S.E.2d at 60 & n.6. Accordingly, the Court finds that the individual Defendants are entitled to official immunity, and summary judgment is granted as to Plaintiff's state law claims against them.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (Doc. 14) is granted.

IT IS SO ORDERED, this 12th day of June, 2009.

S/Clay D. Land  
CLAY D. LAND  
UNITED STATES DISTRICT JUDGE
